## American Casualty Company v. Keator et al.

*Kratz, Hillegass & Moran,* for plaintiff.
*Julian W. Barnard,* for defendants.

CORSON, J., May 24, 1935.—By stipulation of counsel, both of the above cases were tried together. The facts in each case apparently are exactly similar except for the difference in the amounts of money involved. Plaintiff is an insurance company issuing automobile casualty and liability insurance. Defendants are automobile owners. Since the facts are practically the same, we shall discuss the case of American Casualty Company v. Keator.

On April 3, 1930, at the request of the defendant, William S. Taylor, an insurance agent, obtained certain policies of insurance covering public liability and property damage to Keator's automobiles. Admittedly, at that time the cost of these policies was paid in full by the defendant. From the evidence, it would appear that some time prior to October 7, 1930, an officer of the plaintiff company interviewed the agent Taylor and raised some question as to the solvency or at least the financial stability of the insurance company in which Taylor had insured Keator's cars. Apparently, this officer of the plaintiff company suggested that it might be well for Taylor to become a general agent of the plaintiff company, and that he change his insurance from the allegedly "weak company" to the plaintiff. All of these nego-

tiations between the plaintiff company and Taylor were without the knowledge of Keator.

On October 7, 1930, Taylor was appointed general agent for the plaintiff company. On or about October 13, 1930, Keator received policies of insurance in the plaintiff company covering his two automobiles formerly covered by the policies of the so-called "weak company". Keator was notified by Taylor, acting as general agent of the plaintiff company, to send in his policies in the "weak company" for cancellation, and that the new policies in the plaintiff company were being given him without charge so that he might be insured during the remainder of the year for which he had fully paid.

Keator, without any knowledge of what had taken place, returned his policies to Taylor and retained possession of the policies of the plaintiff. No claim was made against Keator by the plaintiff until long after the expiration date of the policies, and it may be that no demand would then have been made if it had not been for the bankruptcy of William S. Taylor. After the discharge of Taylor in bankruptcy, apparently owing the plaintiff about four hundred dollars, the plaintiff brought suit against Keator.

The question to be determined is whether or not, upon all the evidence, the trial judge should have directed verdicts in favor of the plaintiff. Plaintiff contends that defendant received the benefit of these policies and should pay for them. Defendant contends that he received no benefit by accepting such policies in that he had already paid his insurance premiums for a full year and he gave up his rights in the first policies in exchange for the present policies. So far as it appears from the evidence, the so-called "weak company" was still solvent and doing business throughout the period covered by defendant's first policies. It would further appear that Taylor received, or was in a position to receive, from the so-called "weak company" a return premium at the so-called short rate upon the policies turned in by Keator. If this be

true, and the jury might well have inferred it from the evidence, certainly such cancellation premium, if paid to the general agent, must be credited upon plaintiff's claim against the defendant. Such payment to Taylor, or money collected by Taylor, upon these policies would be payment to the company: Ætna Life Ins. Co. v. Clark, 62 Pa. Superior Ct. 528.

Plaintiff contends that the general agent, in substituting policies, as was done in this case, violated the Act of May 17, 1921, P. L. 789, secs. 635 and 636, wherein rebates are made illegal and an insurance company may recover such rebates from the insured. See Ætna Life Ins. Co. v. Clark, supra; Farmers & Breeders Mutual Reserve Fund Live Stock Ins. Co. v. Derr, 59 Pa. Superior Ct. 600.

Did the action of the parties in the present case constitute a rebate within the provisions of the Act of 1921, supra? Plaintiff cites Rewriting of Policies by Insurance Agents, 19 D. & C. 276, wherein Deputy Attorney General Saylor advises the Insurance Commissioner that a transaction somewhat similar to the transaction in the present suit must be considered a rebate and therefore a violation of the Act of 1921. This opinion, however, is based upon the assumption that the agents rewrite risks without expense to the insured where the previous company carrying the risk has gone into receivership. The opinion holds that agents in such a case would be offering inducements to the insured "in that they are advancing their own funds to retain their clientele". In the present case, however, we do not have a defunct company but a going concern presumably able and legally bound to return the unearned premium where there has been a cancellation of the policy.

Certainly, there is no inducement to the insured in the present case. His insurance in the "weak company" was still valid and not affected by receivership or similar proceedings. He therefore merely gave up a valid insurance policy in return for another insurance policy, and the

only difference to be found between such policies is the opinion, possibly based upon rumor, of an officer of the plaintiff company as to the solvency of the first insurance company. There is evidence upon the part of Taylor that the plaintiff company extended to him a special rate so that in canceling the "weak" policies he would receive sufficient money to pay for the new policies at the special rate.

There is evidence, or certainly a strong intimation, by Taylor that the plaintiff company knew exactly what was going on, and that the transfer was to be made without expense to the present defendants. If such were the fact, the only question of rebate or special rates would seem to arise between the plaintiff and its own general agent.

In the case of Hirsch v. Singer, 86 Pa. Superior Ct. 605, the agent agreed that he would pay the first premium on a life insurance policy and accepted the promise of the insured to repay him for such advance. The court held (pp. 607-608) :

"The transaction, as we view it, did not constitute a violation of the Act of 1921. The plaintiff [agent] neither offered nor gave the defendant any rebate or part of his commission or special advantage or inducement not specified in the policy in order to obtain his application or effect the contract of insurance. . . . In applying the Act much must depend on the circumstances of the case, and in this instance there was nothing shown that would cast suspicion on the good faith of the parties at the time or lead to the conclusion that any violation, direct or indirect, of the Act of 1921 was intended or practiced."

It would seem that in the Hirsch case the insured did benefit even more than in the present case, where we are unable to say from the evidence that the insured received any benefit whatever. Certainly, in the Hirsch case, the insured technically received the benefit of the interest upon the unpaid premium during the period of delayed payment.

The further question arises in the present case as to

whether or not payment was not made by the general agent to the company. Plaintiff brings suit upon an alleged book account, and avers that the policy was issued at the request, and application, of the defendant. The only book account produced by the plaintiff was an account between the plaintiff and Taylor, its general agent, under which various policies were set forth as owing, not by the various insureds to the company but by Taylor. Plaintiff admitted that the general practice of the plaintiff had been merely to charge the general agent for the amount of insurance which he may have written, and that the system of noting the policies had been set up only for the purpose of aiding the company in determining on which policies payments were made by the general agent.

Taylor stated that he never made payments as to any particular policies, but merely sent in certain lump sums to the company at such times as he was able, and that the company credited such payments against the various policies as it saw fit. He did admit that on some occasions the bookkeeper of plaintiff company would come to his office and go over the question as to what policies were being paid by certain checks.

The jury might well have found from the evidence of Taylor that the policies herein questioned were issued by him within a few days after his appointment as general agent of the plaintiff, and that, upon the theory that the company should have credited his lump sum payments to his policies in the order in which they were written, his payments should long since have been credited to payment of the present policies. If the company did not credit such payments upon these policies, it would seem to strengthen the impression which must be gathered from the evidence that the plaintiff company knew exactly what had been done by Taylor, and relied purely upon Taylor to make payment to them after he had canceled the policies turned in by the defendant.

Upon all the evidence, we feel that the trial judge could

not have directed the jury as a matter of law that the defendants had received a rebate or that the jury should have been given binding instructions that legal payment had not been made to the plaintiff company.

And now, May 24, 1935, for the reasons given in the foregoing opinion, the plaintiff's motions in each of the above cases for judgment n. o. v. are refused, and an exception in each case allowed to the plaintiff.

From Aaron S. Swartz, Jr., Norristown.